# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

CECIL LAMAR FUNDERBURK,

   Plaintiff,

   v.

RICHARD GRAHAM,
RONALD WEBER,
CORY WALKER,
RODNEY L. DAVIS,
GREGORY FORNEY,

   Defendants.

Civil Action No.:  CCB-19-2313

## MEMORANDUM

On April 30, 2020, this court issued a memorandum order denying without prejudice defendants' motion to dismiss or for summary judgment because the court was unprepared to rule on defendants' motion without supplemental briefing on the issues involved. ECF No. 13 at 1. Specifically, this court required information regarding (1) whether the threat to Funderburk's safety from the Bloods gang was legitimate; (2) when prison officials subjectively became aware of these threats; and (3) what, if any, actual harm Funderburk suffered as a result of the threats. *Id*. Defendants have filed another motion to dismiss or for summary judgment. ECF No. 14. No hearing is necessary to resolve the unopposed[1] motion pending before the court. *See* Local Rule 105.6 (D. Md. 2018).  For the reasons stated below, the unopposed motion, construed as one seeking summary judgment, shall be granted and the complaint dismissed.

---

[1] On July 6, 2020, Plaintiff Cecil Funderburk was advised of his right to file an opposition response within 28 days of the date of the letter and of the consequences of failing to do so, but has failed to file anything further in the case. ECF No. 15.

**Background**

I.      **Plaintiff's Claims**

Plaintiff Cecil Funderburk alleges that on November 25, 2018, he "spoke with the officer in charge and informed him" that he could not be housed in Housing Unit 3 ("HU 3") anymore because there had been threats made on his life.  ECF No. 1 at 5.  The officer then escorted Funderburk "behind door six" to tell him that he would arrange for Lt. Gregory Forney to speak with him about his claim.  *Id*.  About "five minutes later" Funderburk spoke with Lt. Forney and told the lieutenant that he could not be housed in general population because the Bloods, including Funderburk's current cellmate, had made "verbal threats to physically harm" him if he continued to live in HU 3.  *Id*.  Funderburk explained that the gang had accused him of stealing a significant amount of drugs from his cellmate.  *Id*.  Funderburk denies the accusation.  *Id*.

According to Funderburk, Lt. Forney informed him that the only way he could help was if Funderburk wrote an inmate statement form explaining the problem.  *Id*.  Funderburk agreed to write the statement and Lt. Forney left the area only to return a short time later to inform Funderburk that he would not help him because Funderburk had a history of making frivolous claims.  *Id*.  Funderburk denies having made frivolous claims.  *Id*.

Lt. Forney gave Funderburk the choice of either returning back to his assigned housing or to refuse housing and be sent to disciplinary segregation.  *Id*.  Funderburk states he had no other choice but to refuse housing and he was sent to disciplinary segregation as a result.  *Id*.

During December of 2018, Funderburk states he contacted the Warden, Assistant Warden, Gang Intelligence Agent Sgt. Beeman, and the disciplinary segregation case manager to explain that his life was in danger and that the threats from gang members continued while he was on disciplinary segregation.  *Id*.  He claims nothing was done to try to protect him.  *Id*.

In addition to the correspondence Funderburk sent, he filed two administrative remedy procedure complaints ("ARP") on December 2 and 16, 2018. ECF No. 1 at 7. He states both were dismissed "almost immediately." *Id*. He appealed the Warden's decision to the Commissioner of Correction, but his appeal was also dismissed on February 5, 2019. *Id*.

Funderburk continued contacting Warden Richard Graham and Case Manager Rodney L. Davis regarding his need for protection, explaining that their lack of action left him with no other choice but to continue refusing housing and remain on disciplinary segregation. ECF No. 1 at 7. Funderburk states that those "in house letters and request[s] were either ignored or discarded." *Id*.

Funderburk contacted Rodney Davis requesting a transfer to another prison because he "cannot be housed safely" in WCI. ECF No. 1 at 7. On April 19, 2019, Funderburk's request for a transfer[2] was denied because he "did not fit the criteria." *Id*.

Funderburk then contacted his family about the situation "and they start[ed] calling" to inquire about his safety and well-being. *Id*. On May 10, 2019, Funderburk was given a segregation review by Rodney Davis, Cory Walker, Lt. James Smith, and Melanie Gordon. *Id*. Funderburk verbally expressed his situation regarding his concerns for his safety during the meeting. *Id*. He claims Cory Walker told him that the review was taking place because his family had been calling. *Id*. Walker and Davis gave Funderburk an inmate statement form to complete. *Id*. Funderburk states he completed the form and returned it the same day. *Id*.

On June 10, 2019, Funderburk filed another ARP which was dismissed the next day. ECF No. 1 at 8. He states that between June 12 and 21, 2019, he wrote to Walker and Davis "a significant amount of times" because his disciplinary segregation was due to end on June 24, 2019,

---

[2] While this case has been pending, Funderburk was transferred to Eastern Correctional Institution.

and Funderburk wanted to be certain he would be sent to "administrative segregation pending investigation" when it ended. *Id*.

On June 22, 2019, Funderburk was told by a correctional officer that he was not being classified to administrative segregation. *Id*. Funderburk therefore refused his housing assignment again. *Id*.

On June 24, 2019, Funderburk was given a disciplinary adjustment hearing which resulted in an additional 30-day disciplinary segregation sentence. ECF No. 1 at 8. Funderburk appealed the decision and states that he "explained in great detail" why he continues to refuse housing, how he fears for his life, and why. *Id*. The Warden affirmed the adjustment decision. *Id*.

On July 9, 2019, Funderburk states that he filed a complaint with the Inmate Grievance Office ("IGO") regarding the case managers' decision. *Id*. Funderburk does not state which decision his IGO complaint pertains to, but states he never received a response to his complaint. *Id*. As of August 8, 2019, Funderburk was still on disciplinary segregation and claims correctional officials are refusing to protect him from a threat to his safety. *Id*.

As relief, Funderburk seeks monetary damages of $50,000 and a court-ordered transfer to another medium security prison.[3] ECF No. 1 at 4.

## II.     Defendants' Response

According to Correctional Case Management Supervisor ("CCMS") Michael Yates, correctional staff first became aware of Funderburk's claim that he was being threatened by the Bloods gang on May 8, 2018, but the threat was never confirmed as legitimate. ECF No. 14-7 at 1, ¶¶3,4. CCMS Cory Walker states that Funderburk was placed on administrative segregation by Lt. Wagner on August 6, 2017, after he was stabbed. ECF No. 14-6 at 1, ¶3. Walker assisted

---

[3]     Funderburk's request for injunctive relief is moot as he was transferred to Eastern Correctional Institution on September 5, 2019. ECF No. 14-2 at 1, ¶3 (Declaration of Rodney Davis).

Wagner in the investigation into Funderburk's claim that he was stabbed by an inmate known by the nickname Savage. *Id*. Walker contacted Sgt. Beeman who works in the Intel Unit for WCI, and Beeman provided him with the names of the only two inmates at WCI who were known by the nickname Savage. *Id*. Walker prepared a six-person photographic lineup that included pictures of the two inmates identified by Beeman and showed the array to Funderburk. *Id*. Funderburk was unable to identify his assailant and Walker recommended his removal from administrative segregation. *Id*. Wagner agreed with the recommendation and Funderburk was removed on February 26, 2018; he remained in general population without incident until November 25, 2018. *Id*.

Lt. Gregory Forney confirms he spoke with Funderburk on November 25, 2018, regarding his housing assignment. ECF No. 14-5 at 1, ¶3. He denies that Funderburk said he feared for his safety due to threats from the Bloods, his cellmate, or any other inmate at WCI. *Id.* Forney states that Funderburk simply said he was not going to go back to his assigned cell and would not tell Forney why. *Id*. When Forney advised Funderburk that he would have to write a notice of inmate rule violation for refusing housing if Funderburk could not provide a valid reason, Funderburk continued to refuse to return to his cell. *Id*. Funderburk was therefore escorted to HU 4, Forney wrote a notice of inmate rule violation, and Funderburk pled guilty to the charge of refusing housing on November 30, 2018. *Id*.; *see also* ECF No. 14-5 at 3-11 (Notice of Infraction and Adjustment Report). According to Forney, if Funderburk had stated that he feared for his safety he would have been placed on administrative segregation and an investigation would have been conducted to "verify the validity of his fears." ECF No. 14-5 at 1, ¶3.

On May 8, 2019, Rodney Davis contacted Cory Walker regarding Funderburk's new allegation that his safety was in jeopardy. ECF No. 14-2 at 1, ¶4; ECF No. 14-6 at 2, ¶4. Davis

also received a phone call from Funderburk's sister regarding his safety and requesting an immediate transfer. ECF No. 14-2 at 1, ¶4. Walker instructed Davis to interview Funderburk and obtain a written statement regarding his safety concerns. ECF No. 14-2 at 1, ¶4; ECF No. 14-6 at 2, ¶4. Davis obtained a written statement from Funderburk on May 10, 2019. ECF No. 14-2 at 1, ¶4. Davis states that, "[a]pproximately a week later, I received a handwritten note that [Funderburk] claimed somebody had written to him threatening him bodily harm" which Davis forwarded to Walker. *Id*.

> Funderburk's "Inmate Statement" dated May 10, 2019, states as follows:
>
> On November 25, 2018 my then cell buddy Bernard Gator who is a high ranking Blood accused me of taking around $500.00 worth of drugs from his "stash" which I did not take. I tried to talk to his Big Homie meaning his Superior who goes by the name K.D. about the situation and he instantly told me "I ain't trying to hear it, if you don't get the fuck off the tier I was going to get hit meaning stab[b]ed" so I informed the "OIC" and Lt. Forney of the situation and he told me I can either go back on the tier or refuse housing. So at that point I refused housing doing (sic) the month of December and January I received kites talking about if I don't pay $500.00 dollars I will be "hit" so don't come back on the compound I have been refusing housing every (sic) since. During the month of April 2019, a blond named "Dro" told me in the cages during dis-seg rec that he heard about me and if I came back on the compound I'm going to get hit if I don't pay up. I never even met this dude before so word is still spreading I guess.

ECF No. 14-2 at 3. The statement is handwritten.

The threatening note that Funderburk turned over to Davis and claimed he received in his cell is also handwritten. ECF No. 14-2 at 4. A handwritten note on Funderburk's Inmate Statement addressed to Walker opines that the threatening note is written in the same handwriting as Funderburk's Inmate Statement. *Id*. at 3.

Defendants state that Funderburk's medical records were searched to determine if there were any reports of injuries consistent with an assault on Funderburk by another inmate. The only record found was dated January 15, 2019, which contains a report by Funderburk that he was in

6

an altercation 12 days before, but he denied any injuries.  ECF No. 14-9 at 2.  The physical examination performed by Dennis Martin, RN, did not reveal any injuries.  *Id*.  A search of all other available records, performed by CCMS Michael Yates, failed to locate any reports that Funderburk was involved in an altercation on January 3, 2019.  ECF No. 14-10 at 1, ¶ 3.

### Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Funderburk must establish that defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with 'evolving standards of decency.' Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations and internal quotations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837; *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).

"The Eighth Amendment's prohibition on 'cruel and unusual punishments' imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer*, 511 U.S. at 832). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id*. "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (internal quotations omitted). A two-part

inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor*, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014) (internal quotations omitted). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A genuine dispute of fact regarding the extent of the injury suffered precludes summary judgment. *Raynor*, 817 F.3d at 128-29.

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id*. at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways, including inference from circumstantial evidence" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128 (quoting *Farmer*, 511 U.S. at 842).

Funderburk's claim that his life was being threatened by the Bloods was brought to the attention of correctional staff on May 8, 2018. ECF No. 14-7 at 1, ¶3. Funderburk's claim was investigated and could not be confirmed. *Id*. at ¶ 4. Where, as here, the credibility of the asserted threat to safety cannot be verified, the duty to take action for Funderburk's protection does not arise. In short, there is no evidence that the named defendants had actual knowledge of a

substantial risk to Funderburk's safety. As such, defendants are entitled to summary judgment in their favor.

 A separate order follows.

 10/19/20                      /S/
Date                         Catherine C. Blake
                         United States District Judge